# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

___

CALVIN COOLEY,

    Petitioner,

v.                                              Case No. 17-13942

KRIS TASKILA,[1]

    Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Calvin Cooley, an inmate at the Baraga Correctional Facility in Baraga, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his Wayne County Circuit Court jury trial convictions for three counts of assault with intent to commit great bodily harm less than murder, for which he is serving a sentence of seven to twenty years in prison. The petition raises six claims of constitutional error involving violation of Petitioner's speedy trial rights, ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and the constitutionality of the assault statute under which he was convicted, Mich. Comp. Laws § 750.84. Because the court finds these claims lack merit, it will deny the petition. The court will also deny a certificate of appealability.

---

[1] The court amends the caption to reflect the name of Petitioner's current warden. *See* Rule 2(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Kris Taskila is the Acting Warden at Baraga Correctional Facility.

## I. BACKGROUND

Petitioner was convicted by a jury of three counts of assault with intent to do great bodily harm less than murder (AWIGBH), Mich. Comp. Laws § 750.84; one count of domestic violence, Mich. Comp. Laws § 750.812; and one count of assault and battery. Mich. Comp. Laws § 750.81. *People v. Cooley*, No. 317338, 2014 WL 6602685, at *1 (Mich. Ct. App. Nov. 20, 2014). He was sentenced as a third habitual offender to seven to twenty years' incarceration for the AWIGBH counts and to time served for the other two charges. *Id.* The state court of appeals reported the facts as follows:

> This case stems from an altercation between defendant and Alicia Williams that occurred at the home of Ashley Rushin, where they were residing with Williams's son, Chalamar Cofeer. On the evening of March 1, 2012, Williams came home after collecting a tax-refund check, and defendant asked her if he could have three dollars. When Williams said she had spent all of her money, the two began arguing, and defendant confiscated a pair of her shoes. The altercation became physical at that point. Rushin said she asked defendant to leave, but that Williams got in defendant's face and hit him. Williams stated that they merely began "tussling" and denied hitting him first. Williams and defendant fell onto a bed during the altercation, and Rushin asked Cofeer to break them apart, which he did.
>
> Rushin, Williams, and Cofeer each testified that after defendant and Williams were separated, defendant left the room, went into the kitchen, and then returned to attack them. Cofeer said he saw defendant grab a knife while in the kitchen. According to Rushin, defendant swung at her twice, cutting her fingers and temple. Williams said she tried to hide in a closet, but that defendant came after her and stabbed her multiple times in the back with a knife that she described as a butcher knife. Cofeer said he retreated to a bedroom for safety, but that defendant broke the door open, pointed a knife at him, and hit him on the right side of the head. Cofeer said he had difficulty remembering what happened next, but that he left the home and ran for help, learning later that he was bleeding from his head and leg.

*Id.* The state court's findings "are presumed correct on habeas review." *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

Petitioner brought a direct appeal by right, in which he argued that he was entitled to a jury instruction of self-defense and that he was denied his constitutional right to present a defense. The state court of appeals disagreed and affirmed his convictions. *Cooley*, 2014 WL 6602685, at *3. The Michigan Supreme Court denied leave to appeal in a standard form order. *People v. Cooley*, 499 Mich. 854, 873 N.W.2d 557 (Mem).

Petitioner returned to the trial court with a motion for relief from judgment. The trial court rejected Petitioner's arguments that he had received ineffective assistance of appellate counsel, holding he had not shown the "good cause" necessary for relief under Mich. Ct. Rule 6.508(D). (Order, 9/1/2016, ECF No. 8-25, PageID.919.) The court also addressed the merits of Petitioner's claims, finding that Petitioner had not established that his speedy trial rights had been violated, that the prosecutor committed misconduct, that the jury instructions were improper for permitting conviction without evidence of "bodily harm," or that trial counsel was constitutionally ineffective. (*See generally id.*)

Petitioner sought leave to appeal the denial of his motion for relief for judgment. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave in standard form orders. *People v. Cooley*, No. 335116 (Mich. Ct. App. Dec. 21, 2016) (unpublished), *aff'd by* 501 Mich. 878 (2017) (Mem.).

Petitioner now seeks habeas relief based on the following claims:

I. The trial court violated the 180-day rule governing Petitioner's right to a speedy trial.

II. The trial court erred when it denied Petitioner's motion for relief from judgment on his speedy trial right claim.

3

    III. Trial counsel was ineffective for not pursuing a motion to dismiss or object over the speedy trial violation.

    IV. Appellate counsel was ineffective for failing to raise the 180-day rule violation.

    V. The trial court erred by not recognizing prosecutorial misconduct.

    VI. The Michigan Legislature committed structural error in allowing convictions under Mich. Comp. Laws § 750.84 without evidence of injury.

## II.  LEGAL STANDARD

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (O'Connor, J., concurring). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply

4

because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation and citation omitted). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Although section 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, a federal court may grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

"[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court

5

explaining the state court's reasoning." *Richter*, 562 U.S. at 98. Where the state court's decisions provide no rationale, the burden remains on the habeas petitioner to demonstrate that "there was no reasonable basis for the state court to deny relief." *Id*.

However, when a state court has explained its reasoning, that is, "[w]here there has been one reasoned state judgment rejecting a federal claim," federal courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Accordingly, when the last state court to rule provides no basis for its ruling, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and apply *Ylst*'s presumption. *Id*. The "look through" rule applies whether the last reasoned state court opinion based its ruling on procedural default, *id.* at 1194 (citing *Ylst*, 501 U.S. at 803), or ruled on the merits. *Id*. at 1195 (citing *Premo v. Moore*, 562 U.S. 115, 123–133 (2011)) (other citation omitted).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id*. Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

Petitioner's claims of error were addressed by the trial court in its order denying Petitioner's motion for relief from judgement. The state appellate courts denied Petitioner's applications for leave to appeal that decision in standard form orders.

Accordingly, the court will "look through" those orders to the trial court's reasoned opinion and presume the appellate courts relied on the same grounds in denying Petitioner relief. *Wilson*, 138 S. Ct. at 1194.

### A. Violation of Petitioner's speedy trial rights and the "180 day rule"

Petitioner's first two claims are that the trial court violated the "180 day rule" and his speedy trial rights both at trial and in rejecting this claim in his motion for relief from judgment. Petitioner cites for authority Michigan Court Rule 6.004. That rule has two 180-day provisions, neither of which applies to Petitioner. The first provision does not involve a trial right at all, but instead addresses recognizance release for a defendant who has been jailed for more than 180 days before trial. Mich. Ct. R. 6.004(C). The second requires a defendant in the custody of the Michigan Department of Corrections be tried within 180 days after the MDOC delivers the defendant to the prosecutor in the county in which charges were filed. Mich. Ct. R. 6.004(D). Even if the rule's circumstances applied to Petitioner, which they do not, "[a] violation by state officials of a state speedy trial law, taken alone, does not present a federal claim." *Burns v. Lafler*, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004) (citing *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994); *Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991)).

As to Petitioner's constitutional claims of a speedy trial violation, the Sixth and Fourteenth Amendments guarantee a criminal defendant's right to "a speedy and public trial." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017) (citing U.S. Const. amend. VI; *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967)). Whether that right has been violated requires balancing four factors: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice

7

to the defendant." *Burns*, 328 F. Supp. 2d at 722 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The trial court's order rejecting Petitioner's motion for relief from judgment relied on Michigan case law which presented the same four-part test. *See People v Williams*, 475 Mich. 245 (2006); *People v Rivera*, 301 Mich. App. 188, 193 (2013).

While no single factor is "determinative," the length of delay is reviewed first, and further analysis is unnecessary unless the delay is long enough to be prejudicial. *Burns*, 328 F. Supp. 2d at 722 (citing *Barker*, 407 U.S. at 530). The fifteen-month delay in Petitioner's case is sufficient to trigger that analysis as courts find "presumptively prejudicial" delays "approach[ing] one year." *Id.* (citations omitted).

Petitioner repeatedly asserted his speedy trial rights to the trial court, which weighs in his favor. (*See, e.g.,* Pre-trial, 8/21/12, ECF No. 8-6, PageID.178; Mot. Hrg., 5/21/13, ECF No. 8-17, PageID.344.) As to the other factors, however, Petitioner's claim fails.

Neither the court nor the prosecution intentionally caused the delay. *Burns*, 328 F. Supp. 2d at 722 (citing *Norris v. Schotten*, 146 F.3d 314, 327-28 (6th Cir.1998)). There were no "willful" or "tactical" delays by the prosecution. *Id.* (citations omitted). Instead, the delay resulted from the resolution of defects in the charging information against Petitioner following motions by the defense to quash and to dismiss charges. In addition, some delay is attributable to Petitioner's dissatisfaction with his first appointed attorney and the appointment of a replacement. (Order, 9/1/2016, ECF No. 8-25, PageID.922.)

Most critically, Petitioner does not argue that he was prejudiced by the delay. In addition to a defendant's pretrial incarceration and "anxiety and concern[,]" the Supreme

Court has identified as prejudicial "the possibility that [the accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003) (citing *Doggett v. United States*, 505 U.S. 647, 654 (1992)) (internal quotation marks omitted). There is no indication Petitioner's defense was adversely affected by the trial delay. The state court was not unreasonable to reject Petitioner's claim that his constitutional right to a speedy trial was violated.

**B.  Ineffective assistance of trial and appellate counsel**

Petitioner next two claims are that his trial and appellate attorneys were ineffective for not raising the speedy trial issue. On habeas, the court's review of a lawyer's performance is "doubly deferential." *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer of deference is the familiar deficient performance plus prejudice standard from *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The second layer, under AEDPA, asks only "whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 571 U.S. at 15). To prevail, a petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

First, Petitioner's claim that trial counsel failed to raise the speedy trial issue is refuted by the record. On the first day of trial, Petitioner's attorney raised his objections and the court found no constitutional violation of Petitioner's rights. (Trial Tr., 6/10/13, ECF No. 8-18, PageID.365, 368.) As to appellate counsel, courts will not find attorneys constitutionally ineffective for failing to take a futile action or raise a frivolous argument. *Holmes v. United States*, 281 F. App'x 475, 479 (6th Cir. 2008) (citing *Mapes v. Coyle*,

9

171 F.3d 408, 427 (6th Cir. 1999)). The court has determined Petitioner's speedy trial claim is without merit. Petitioner's appellate attorney was not ineffective for not advancing that argument on appeal.

## C. Prosecutorial Misconduct

Petitioner's fifth claim for relief alleges prosecutorial misconduct. However, his allegations of that misconduct differ between his motion for relief from judgment and his habeas petition. In the former, Petitioner asserts that the prosecutor committed misconduct by stating that the jury could not find him not guilty unless he testified. (Mot., ECF No. 8-24, PageID.877.) Petitioner's allegation of misconduct in his habeas petition (presented through his brief for leave to appeal at the Michigan Court of Appeals) is that the prosecutor did not call hospital staff to testify about the victims' injuries, and instead "testified on their behalf. . ." (Pet., ECF No. 1-1, PageID.28.) Neither claim of error entitles Petitioner to relief.

First, Petitioner did not exhaust this claim, because the factual basis he raised to the trial court is not the same as that raised in the state appellate courts. All issues raised on federal habeas review must have first been "fairly presented" in the state courts, which "requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009) (citations omitted). "Fair presentation also requires that 'the same claim under the same theory be presented' for the state court's consideration." *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (citing *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).

"[W]ord-for-word replication" is not required. *Maze v. Lester*, 564 F. App'x 172, 178 (6th Cir. 2014); *see also Bray v. Andrews*, 640 F.3d 731, 735 (6th Cir. 2011)

(finding a claim exhausted where "[t]he phraseology is different, but the gist of the claim is not."). But the state courts must have had a "'fair opportunity' to apply controlling legal principles to the facts" underlying a petitioner's claims of constitutional error. *Id.* (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). For example, an ineffective assistance of counsel habeas claim may not be based on a different "allegedly ineffective action" presented in the state courts. *Caver*, 349 F.3d at 347. Similarly, Petitioner's allegation of prosecutorial misconduct on habeas cites a different action than that raised in his pleadings before the state courts. As a result, this issue is not exhausted.

Regardless of its procedural status, this claim also fails on the merits. *Darden v. Wainwright*, 477 U.S. 168 (1986), is the "clearly established Federal law" governing when prosecutorial misconduct rises to constitutional error. *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (citing *Darden*, *supra*). Prosecutorial misconduct violates the Constitution only if a prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citing *Darden*, 477 U. S. at 181). Even where prosecutors' statements are so extreme as to be "universally condemned," the inquiry remains whether due process was denied. *Darden*, 477 U.S. at 181. On habeas review, the AEDPA raises the bar even higher than the "high standard" set by *Darden*. *Halvorsen v. White*, 746 Fed. App'x 489, 499 (6th Cir. 2018). To obtain habeas relief, "[t]he misconduct must so clearly violate *Darden* that the state court's failure to identify it was not just erroneous, but 'objectively unreasonable.'" *Id.* at 497 (citing *Williams*, 529 U.S. at 409).

The prosecutor's challenged remarks in the instant case did not "so infect[] the trial with unfairness" that Petitioner was denied due process. The record does not bear

11

out Petitioner's assertion that the prosecutor violated his right to remain silent. Further, the jury was clearly instructed that Petitioner enjoyed "the absolute right not to testify," and that its verdict could not be based on the fact he did not. (Trial Tr., 6/12/13, ECF No. 8-20, PageID.670.) Jurors are presumed to follow their instructions. *United States v. Johnson*, 803 F.3d 279, 282 (6th Cir. 2015) (citing *Blueford v. Arkansas*, 599 U.S. 566, 606 (2012)).

As to Petitioner's allegation of vouching, in her closing argument, the prosecutor referred to the medical records of the victims which had been admitted into evidence over no objection by the defense. (*See* Trial Tr., 6/11/13, ECF No. 8-19, PageID.521, 571, 606.) The prosecutor stated in passing that hospital staff had "no reason to lie." (Trial Tr., 6/12/13, ECF No. 8-20, PageID.655.)

Numerous cases have held that a prosecutor does not engage in vouching by arguing witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson*, 473 F. 3d 660, 672 (6th Cir. 2007); *United States v. Israel*, 133 Fed. Appx. 159, 165 (6th Cir. 2005); *United States v. Parker*, 49 Fed. Appx. 558, 563 (6th Cir. 2002). In light of these precedents, nothing about the complained-of portion of the prosecutor's closing statement was improper. She did not suggest a personal belief in the credibility of the hospital staff who treated the victims. Rather, she cited to the medical records and their correspondence with the victims' accounts and the photographs of their injuries. (Trial Tr., 6/12/13, ECF No. 8-20, PageID.655-56.) Petitioner's claim of prosecutorial misconduct over these remarks is without merit.

**D. Jury instruction**

Petitioner's final claim of error is somewhat confusing. He alleges that the Michigan Legislature committed structural error in allowing a jury instruction that permits a conviction "without evidence" of bodily harm under Michigan Comp. Laws § 750.84, rendering the doctrine of lesser-included instruction meritless. (Pet., ECF No. 1-1, PageID.29; *see also* Mot., ECF No. 8-24, PageID.882-83.) He also seems to argue that the prosecutor analogized his offense to that of a "man pointing a gun." (ECF No. 1-1, PageID.29.)

In its order denying Petitioner's motion for relief from judgment, the trial court relied on a criminal defendant's right to have a jury determine his guilt based on consideration of every element of the charged crime. (Order., ECF No. 8-25, PageID.920.) The statute on the offense of assault with intent to commit great bodily harm less than murder, Mich. Comp. Laws § 750.84, does not require proof of actual injury. *People v. Harrington*, 194 Mich. App. 424, 430 (1992). Applying *Harrington*, the trial court found no error in the jury instruction as given. (ECF No. 8-25, PageID.920.)

In addition, "the Supreme Court has never held that due process requires the giving of jury instructions on lesser-included offenses in noncapital cases." *Dansby v. Trombley*, 369 F. App'x 657, 660 (6th Cir. 2010) (citing *Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980)). *Dansby* found a petitioner's challenge to the trial court's failure to instruct on lesser-included offenses "f[ell] outside of AEDPA's purview." *Id.* (citing *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006)). Because Petitioner was not entitled to a lesser-included offense instruction, whether the statutory definition of AWIGBH precluded such an instruction is not a claim that would entitle him to relief.

As to his argument regarding the prosecutor's inference of a gun, Petitioner does not cite the record or otherwise support this claim. The court is not obligated to fill in gaps in Petitioner's pleading. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Gray*, 692 F.3d 514, 521 (6th Cir. 2012) (quoting *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)). Petitioner is not entitled to habeas relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal the court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and quotation marks omitted). In this case, reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. The court will deny a certificate of appealability.

## V. CONCLUSION

For the reasons stated above, Petitioner is not entitled to habeas corpus relief for any of the claims raised in his petition. Accordingly,

IT IS ORDERED that the Petition for Writ of Habeas Corpus is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

14

15

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: October 21, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 21, 2020, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\CHD\2254\17-13942.COOLEY.OpinionOrderDenyHabeas.ps.chd.docx